KITTREDGE, DONLEY, ELSON, FULLEM & EMBICK, LLP
ATTORNEYS AT LAW
THE BANK BUILDING
421 CHESTNUT STREET
PHILADELPHIA, PENNSYLVANIA 19106-2416
TELEPHONE: (215) 829-9900
FACSIMILE: (215) 925-5903
Email: lawoffice@kdefe.com
URL: http://www.kdefe.com

NJ OFFICE
34 TANNER STREET
HADDONFIELD, NEW JERSEY 08033
TELEPHONE: (856) 428-6977
FACSIMILE: (856) 428-7255

KEITH E. JOHNSTON
Email: kjohnston@kdefe.com

November 11, 2003

William J. D'Annunzio, Esquire
Messa & Associates, P.C.
123 South 22nd Street
Philadelphia, PA 19103

RE: Deborah Soeder v. Millar Elevator Service Co.,
Schindler, USA and Eastern Eng. & Elevator Co.
U.S.D.C. for the Eastern District of PA, No. 02-3962
Our File No.: 5713.498

Dear Mr. D'Annunzio:

Please provide a copy of the photographs taken by Ron Schloss during his inspection of the elevator. If Mr. Schloss took digital photographs and has stored the images on a disk, I would also like a copy of the disk. I agree to reimburse you for any costs involved in reproducing the photographs or images.

Thank you for your anticipated cooperation.

Very truly yours,

KEITH E. JOHNSTON

KEJ/jd

KITTREDGE, DONLEY, ELSON, FULLEM & EMBICK, LLP
ATTORNEYS AT LAW
34 TANNER STREET
HADDONFIELD, NEW JERSEY 08033
TELEPHONE: (856) 428-6977
FACSIMILE: (856) 616-9538
Email: lawoffice@kdefe.com
URL: http://www.kdefe.com

PA OFFICE
THE BANK BUILDING
421 CHESTNUT STREET
PHILADELPHIA, PENNSYLVANIA 19106-2416
TELEPHONE: (215) 829-9900
FACSIMILE: (215) 428-7255

KEITH E. JOHNSTON

December 4, 2003

Heidi G. Villari, Esquire
Messa & Associates, P.C.
Four Greentree Centre
Route 73 & Lincoln Drive
Marlton, NJ 08053

RE: Deborah Soeder v. Millar Elevator Service Co.,
Schindler, USA and Eastern Eng. & Elevator Co.
Superior Court of NJ, Camden County,
No. L-3552-02
Our File No.: 5713.498

Dear Ms. Villari:

During your client's deposition Ms. Soeder testified she is receiving Social Security Disability benefits. I would like to obtain a copy of the records from the Social Security Administration and from past experience I have found the Administration will not release the records without a signed authorization in an approved format. I have enclosed an authorization for release of records which I request your client sign and return to my office so I can obtain the records.

Thank you for your attention to this request.

Very truly yours,

KEITH E. JOHNSTON

KEJ/jd
Enclosure

## AUTHORIZATION FOR RECORDS

TO: SOCIAL SECURITY ADMINISTRATION
1234 Market Street
Philadelphia, PA 19107

You and each of you are hereby authorized and directed to do any and all of the following things:

1. disclose all facts pertaining to my Social Security disability claim, including but not limited to payments, medical records and lien amounts, to

    Keith E. Johnston, Esquire
    Kittredge, Donley, Elson, Fullem & Embick
    421 Chestnut Street, 5th Floor
    Philadelphia, PA 19106

2. permit the above-named counsel to examine and make copies of all records pertaining to me or you may furnish such copies to them.

Dated this day of           , 2003.

                                                Deborah Soeder
                                              SSN: 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
                                              DOB: 3/24/58

Signed in the presence of:

_____
Witness

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                                    NO. 02-3962


DEBORAH SOEDER,            )    DEPOSITION UPON
                           )
                           )
            Plaintiff,     )    ORAL EXAMINATION
                           )
                           )
    - vs -                 )         OF
                           )
                           )
MILLAR ELEVATOR SERVICES,  )    DEBORAH SOEDER
SCHINDLER, USA and EASTERN )
ENGINEERING and ELEVATOR   )
COMPANY,                   )
                           )
            Defendants.    )    ORIGINAL
- - - - - - - - - - - - - -
```

       TRANSCRIPT OF DEPOSITION, taken by and before CARY PELLECCHIA, Professional Reporter and Notary Public, at the offices of MESSA & ASSOCIATES, 123 South 22nd Street, Philadelphia, Pennsylvania, on Wednesday, November 12, 2003, commencing at 10:40 a.m.

```
        REPORTING SERVICES ARRANGED THROUGH
   VERITEXT/NEW JERSEY REPORTING COMPANY, L.L.C.
   Kabot Battaglia & Hammer - Suburban Shorthand
   Waga and Spinelli - Arthur J. Frannicola, CSR
           25B Vreeland Road - Suite 301
              Florham Park, NJ 07932
   Tel:  (973) 410-4040   Fax:  (973) 410-1313
```

```
                                                              2
 1  A P P E A R A N C E S:

 2

 3            MESSA & ASSOCIATES
              BY:  WILLIAM J. D'ANNUNZIO, ESQUIRE
 4              Four Greentree Centre, Suite 201
                Route 73 & Lincoln Drive
 5              Marlton, NJ 08053
                   Attorneys for the Plaintiff
 6

 7            KITTREDGE, DONLEY, ELSON,
              FULLEM & EMBICK, LLP
 8            BY:  KEITH E. JOHNSTON, ESQUIRE
                421 Chestnut Street, 5th Floor
 9              Philadelphia, PA 19106
                   Attorneys for the Defendants,
10                 Millar Elevator Service Co.
                   and Schindler Elevator Corporation
11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1  A.           -- the status.
2  Q.           -- status.
3  A.           There was a conversation with Lorraine
4  Raymo and she's one of the administrative
5  assistants in neonatology or pediatrics. I
6  correct that, pediatrics. But that was -- that
7  conversation took place in the year 2000.
8  Q.           Now, you've identified the medical
9  benefits you are currently receiving.
10 A.           Yes.
11 Q.           As I understand, you are not paying
12 any premiums?
13 A.           That's correct.
14 Q.           Do you receive any wage benefits from
15 Cooper Hospital?
16 A.           I received what was called extended
17 sick leave.
18 Q.           How long did you receive extended sick
19 leave?
20 A.           I would say approximately six to eight
21 weeks.
22 Q.           And was the extended sick leave at
23 your standard rate of pay, or was it at a
24 reduced amount?

35

1  A.         I'm not sure. I would have to check
2  the records.
3  Q.         I believe this has been requested
4  already, but did you file income tax returns,
5  both at Federal, State level, for the period of,
6  let's say, 1988 up until the present?
7  A.         Absolutely.
8  Q.         I know that they've been requested in
9  Discovery. I would like to get a copy of those
10 tax returns.
11            Do you have them at home?
12 A.         I could go through the piles.
13 Q.         Okay.
14                  MR. D'ANNUNZIO: 1988 to
15            present was your request?
16                  THE WITNESS: Actually --
17                  MR. D'ANNUNZIO: Hold on
18            for a moment.
19                  1988 to the present? Is
20            that your request? Is that what I
21            thought I heard you say?
22                  MR. JOHNSTON: 1992 to the
23            present. Since it's unclear what --
24                  MR. D'ANNUNZIO: Sure. I'm

1  not objecting.
2              MR. JOHNSTON:  -- her source
3  of income is.  So if you have --
4  whatever records you have.
5              THE WITNESS:  I believe that
6  Robin has that information.
7              MR. D'ANNUNZIO:  We may
8  have it, and if we have it, we'll
9  produce it.  If not, we'll ask our
10 client to get it and we'll produce it
11 to you.
12             MR. JOHNSTON:  It's more of
13 a nature of a reminder.  As long as
14 you're here, I'll ask it.
15             THE WITNESS:  Sure.
16 BY MR. JOHNSTON:
17 Q.     After the six to eight weeks of
18 disability, did you then continue to receive
19 some type of wage benefit?
20 A.     Not a wage benefit.
21 Q.     You got some money?  It's called
22 money.
23 A.     From what source?
24 Q.     First of all, I just want to establish

1          not they say Cooper Hospital on them,
2     I don't know, but.
3  BY MR. JOHNSTON:
4  Q.      Generally, if you make a claim for a
5  work-related injury, you have to fill out an
6  accident report.
7  A.      I filled out forms --
8  Q.      If you make a workers' compensation
9  claim, you have to do some paperwork for
10 workers' compensation claims. And that's at the
11 request of your employer, Cooper Hospital.
12 Whether they say Cooper Hospital on them or not,
13 I don't know.
14          MR. D'ANNUNZIO: Okay.
15          THE WITNESS: Okay. I
16     filled out several forms when I went
17     to Cooper Occupational Health on May
18     30th of 2000 at Occupational Health.
19     Those forms related to the accident.
20     I have also filled out workers'
21     compensation forms. I have not filled
22     them out at the hospital. Those forms
23     were given to me by my attorney.
24 BY MR. JOHNSTON:

100

1  Q.        Can you think of any other forms that
2  you filled out?
3  A.        I filled out the form for the New
4  Jersey disability.
5  Q.        Have you provided any narrative
6  statements describing the accident?
7  A.        Sworn?
8  Q.        No, not sworn.
9              MR. D'ANNUNZIO:  No.
10             MR. JOHNSTON:  Narrative can
11         be handwritten, typed or any other
12         form.
13             THE WITNESS:  Yes.
14 BY MR. JOHNSTON:
15 Q.        To whom did you provide the narrative
16 statements?
17 A.        To the New Jersey State Disability and
18 to Cooper Hospital Occupational Health.
19 Q.        Was it a hand-written statement?
20 A.        Yes.
21             MR. D'ANNUNZIO:  Both of
22         them handwritten?
23             THE WITNESS:  Yes.
24 BY MR. JOHNSTON:

194

1  A.        Yeah, I have a letter.
2                    MR. D'ANNUNZIO:  Let him
3          ask the question.  Keith, I'm sorry.
4  BY MR. JOHNSTON:
5  Q.        I was going to say what do you mean by
6  that?
7  A.        I received a letter from workers' comp
8  that I wasn't going to receive workers'
9  compensation.  And they based that on my going
10 to Jefferson that Wednesday.  When I explained
11 that I had to go to Jefferson to get the MRI and
12 that I was told by Cooper that they were not
13 able to provide it, and I have a letter from
14 them stating that, since I elected outside care,
15 that, you know, they were not giving me workers'
16 comp.
17           I have a letter from Sky Ball
18 Associates in reference to that.  So then I
19 needed to, you know, get care.
20 BY MR. JOHNSTON:
21 Q.        Okay.  So you've identified Sky Ball
22 as an administrator of the workers'
23 compensation for Cooper Hospital.
24                    MR. D'ANNUNZIO:  Let me

```
 1            object to the form of the question.
 2            If you know what they are, you can
 3            answer the question.
 4                    THE WITNESS:  To my
 5            understanding, they represent Cooper
 6            Hospital as far as the insurance.
 7  BY MR. JOHNSTON:
 8  Q.        Have you had any other communication,
 9  that's telephone calls, letters or whatever with
10  Sky Ball, concerning a workman's compensation
11  claim?
12                    MR. D'ANNUNZIO:  Other than
13            that letter.
14                    THE WITNESS:  I have two
15            letters from them, and we had phone
16            conversations, which I have the phone
17            records of them that I tried to
18            resolve it, but you know.  I have
19            phone records.
20                    MR. D'ANNUNZIO:  You have
21            called Sky Ball, or they have called
22            you?
23                    THE WITNESS:  That was early
24            on.  That was in the year 2000.
```

1  MR. D'ANNUNZIO: After
2  getting that letter, you've had
3  additional telephone calls or
4  telephone conversations with Sky Ball
5  to try to resolve your workers' comp
6  claim.
7  THE WITNESS: Only back in
8  June of 2000.
9  MR. D'ANNUNZIO: Okay.
10  THE WITNESS: And then when
11  -- I didn't understand it because I
12  knew nothing about --
13  MR. D'ANNUNZIO: He's just
14  asking you had you had any
15  communications, telephone calls, other
16  letters, other than the two letters
17  you've already testified to and other
18  than the telephone calls. Any other
19  communications with Sky Ball?
20  THE WITNESS: Since that
21  time?
22  MR. D'ANNUNZIO: At any
23  time, other than those two letters and
24  telephone calls that you just talked

197

1           about.
2                THE WITNESS:  No.
3  BY MR. JOHNSTON:
4  Q.      Was the general nature of the
5  conversation with Sky Ball that you disagreed
6  with their determination that you would not be
7  entitled to workers' compensation?
8                MR. D'ANNUNZIO:  Let me
9           object to the form of the question.
10          You can answer it.
11               THE WITNESS:  I was,
12          actually, in disbelief because the
13          letter indicated that I was the one
14          who chose outside care.  I was in
15          total disbelief even though I did not
16          know any of the rules or regulations
17          of workers' comp.
18               I was in total disbelief
19          because it was Cooper Hospital who
20          told me to get an MRI at another
21          facility because they were not able to
22          provide that day.  So the letters were
23          based on the fact that I sought
24          outside treatment, but that outside

198

1   treatment was sought because of
2   instruction that I received from
3   Cooper Hospital. And I have the copy
4   of that prescription.
5           MR. D' ANNUNZIO: Okay.
6   BY MR. JOHNSTON:
7   Q.      Am I correct that you have the letters
8   from Sky Ball?
9   A.      Yes, I do.
10  Q.      I'd like to see a copy of those
11  letters, so I understand what's going on.
12  A.      Yes.
13          MR. D' ANNUNZIO: She'll
14          provide them to her counsel and
15          counsel will provide them to
16          Mr. Johnston.
17          THE WITNESS: Yes.
18  BY MR. JOHNSTON:
19  Q.      Was it your understanding that
20  communication of Sky Ball --
21          MR. D' ANNUNZIO: Keith,
22          just let me -- so far you are
23          requesting IRS tax returns, both State
24          and Federal, 1992 to present and now

1    these letters, written communications
2    from Sky Ball?
3            MR. JOHNSTON: Right.
4            THE WITNESS: Do you want
5    the --
6            MR. D'ANNUNZIO: Now let
7    him ask the question.
8            THE WITNESS: Oh, okay.
9    BY MR. JOHNSTON:
10   Q.      Was it your understanding that Sky
11   Ball told you that they would not pay the
12   medical bills and would not pay your wage
13   benefits because you sought treatment outside of
14   the Occupational Health?
15   A.      I did not know what the whole package
16   included, but I believed from the letter that
17   they were talking about the wage benefits.
18   That's the indication that I received from the
19   letter.
20   Q.      Do you know if that decision by Sky
21   Ball has been challenged as part of the workers'
22   compensation claim that you've made through your
23   series of attorneys?
24           MR. D'ANNUNZIO: Do you

1   know?
2              THE WITNESS: I'm sure
3   that -- the fact that we have a case.
4              MR. D' ANNUNZIO: He doesn't
5   want you to guess. He wants to know
6   do you have actual knowledge whether
7   or not that claim has been challenged
8   through your attorneys or not.
9              THE WITNESS: In what sense
10  do you mean challenged?
11             MR. D' ANNUNZIO: Are they
12  contesting it on your behalf? Have
13  they filed documents or contacted them
14  to say, hey, this isn't the fair thing
15  to do or the right thing to do. You
16  need to proceed with making payments.
17  Do you know what your attorneys are
18  doing?
19             THE WITNESS: I don't know
20  what they're doing. I know -- I don't
21  know what conversations they've --
22             MR. D' ANNUNZIO: So you
23  don't know?
24             THE WITNESS: I don't know

213

1  original question was why I moved
2  there, and I was trying to explain --
3             MR. D'ANNUNZIO:  I think
4  you told him.
5             THE WITNESS:  Okay.
6             MR. D'ANNUNZIO:  You
7  couldn't find a handicapped apartment
8  in Philadelphia that was affordable.
9             THE WITNESS:  Right.
10            MR. D'ANNUNZIO:  And you
11  finally found one in Ephrata.  And
12  Keith will ask you another question if
13  he doesn't think you've answered it.
14            THE WITNESS:  Okay.
15  BY MR. JOHNSTON:
16  Q.      So Ephrata was the closest place
17  geographically that you could find.
18  A.      -- find something that was --
19  Q.      Is that your testimony?
20  A.      Yes.
21  Q.      You mentioned that you had photographs
22  of your home.  Have you taken photographs of
23  anything else that's related to this lawsuit
24  such as physical condition, bruises, condition

213

1   original question was why I moved
2   there, and I was trying to explain --
3              MR. D'ANNUNZIO:  I think
4   you told him.
5              THE WITNESS:  Okay.
6              MR. D'ANNUNZIO:  You
7   couldn't find a handicapped apartment
8   in Philadelphia that was affordable.
9              THE WITNESS:  Right.
10             MR. D'ANNUNZIO:  And you
11  finally found one in Ephrata.  And
12  Keith will ask you another question if
13  he doesn't think you've answered it.
14             THE WITNESS:  Okay.
15  BY MR. JOHNSTON:
16  Q.      So Ephrata was the closest place
17  geographically that you could find.
18  A.      -- find something that was --
19  Q.      Is that your testimony?
20  A.      Yes.
21  Q.      You mentioned that you had photographs
22  of your home.  Have you taken photographs of
23  anything else that's related to this lawsuit
24  such as physical condition, bruises, condition

1  of the elevator, anything else that is related
2  to the lawsuit?  Are you aware of any other
3  photographs?
4             MR. D'ANNUNZIO:  Let me
5        object to that.  That's actually two
6        different questions.  Are you aware of
7        any other photographs other than the
8        photographs of your apartment?
9             And number two, have you
10       taken any other photographs of
11       anything, other than the apartment
12       that relates to this case?
13            THE WITNESS:  No.
14            MR. D'ANNUNZIO:  To both?
15            THE WITNESS:  What's the
16       both part?
17            MR. D'ANNUNZIO:  No, you're
18       not aware of any other photographs
19       other than the pictures of your
20       apartment and two, no, you haven't
21       taken any other photographs, other
22       than the pictures of the apartment
23       that relate to this case?
24            THE WITNESS:  Correct.